IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

DAVID L. LANG,                    §
                                  §
            Plaintiff,            §
                                  §
VS.                               §   NO. 4:06-CV-120-A
                                  §
JOHN SNOW, Secretary,             §
United States Treasury,           §
                                  §
            Defendant.            §

MEMORANDUM OPINION
and
ORDER

On December 7, 2006, defendant, John Snow, Secretary, United States Treasury, Bureau of Engraving & Printing ("BEP"), moved for summary judgment on all claims asserted by plaintiff, David L. Lang ("Lang"), in this suit.  Having considered the motion, the response, the reply, the summary-judgment evidence, and the applicable legal authorities, the court concludes that the motion should be granted as stated below.

I.

Plaintiff's Claims

In this lawsuit, Lang contends that BEP, his employer, discriminated against him based on race, and retaliated against him based on prior EEO activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000-e-16, et seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

II.

The Motion for Summary Judgment

BEP maintains that Lang cannot establish a prima facie case of discrimination or retaliation.  Even if there were evidence establishing a prima facie case as to either claim, BEP contends that it had a legitimate, non-discriminatory reason for demoting Lang.  Further, BEP contends that Lang cannot establish that such non-discriminatory reason is pretextual.

III.

Facts

A. Relevant Undisputed Facts

1. BEP and Lang's Equal Employment Office Activity

BEP is a bureau under the United States Department of Treasury and is responsible for manufacturing the nation's paper currency.  Lang, an African American, has been employed at BEP's Western Currency Facility, located in Fort Worth, Texas, since June of 1998.  Lang began his employment with BEP as a GS-11 grade security specialist in the product security branch.  He was promoted to a GS-12 grade approximately three months after he was hired and approximately two months after that applied for and was promoted to a GS-13 position as a Product Security Branch Manager.

In October of 1999 a GS-14 grade Security Division Manager position became available and Lang applied.  Ms. Martha Howe ("Howe") was selected to fill the position.  Following the non-selection, Lang filed a complaint with the Equal Employment

2

Office ("EEO"), which was resolved through a settlement
agreement.  The settlement agreement stated that after one year,
if Lang had met the conditions of the agreement, he would be
promoted to the Deputy Division Security Manager ("DDSM")
position.  Lang was promoted to the DDSM position in February of
2001 and was placed under the direct supervision of Howe.  In
2002, Howe refused to grant Lang's request for a waiver from a
Criminal Investigator course.  Lang filed an informal complaint
with the EEO and was eventually given the waiver he sought from
Howe.  In February of 2003 Lang again filed an informal complaint
with the EEO concerning a performance evaluation Howe had given
him on his annual appraisal.  A formal complaint regarding such
appraisal was never filed by Lang.

   2. <u>Lang's Story at the TCEPC Meeting</u>

    The Tarrant County Emergency Planning Committee ("TCEPC")
held a meeting at BEP's Fort Worth facility on August 20, 2003.
The meeting, being hosted by Isaiah Liggins ("Liggins"), was
attended by representatives of Tarrant County agencies,
communities, corporations, and organizations.  Before the meeting
began, Liggins found Lang speaking to the guests in the
auditorium where the event was being held.  After determining
that Lang was speaking with them about the security of BEP's
facility, he let the conversation continue, and told Lang that he
would return to start the meeting when all of the guests were
present.

Lang was speaking from the podium in the auditorium when he told the following story:

> A drunk man stumbled into Military Police headquarters, where Lang stationed.  The drunk man told Lang "Someone stole my car."  Lang asked him "Where did you last see it?"  The drank [sic] man removed from his pocket a ring of keys, held out his car key, pointed to it and said "Right here."  Lang then told the man "I will help you find your car, but I will also have to give you a citation for indecent exposure because your clothes are disarranged, your pants are open and you are partially exposed."  The drunk man looked down and stated "Oh no, they stole my girlfriend too."

App. to Def.'s Br. in Supp. of Mot. for Summ. J. 259-60. Howe walked into the auditorium while Lang was telling the story and left at some point after Lang was finished.  As Howe was leaving the room, Lang told the guests that Howe was his boss and that he might start passing out resumes because he may need to look for another job.

When Liggins returned to start the meeting, he thanked Lang for speaking to the guests while he was away.  After others standing in the group began to laugh, Liggins wanted to know what had happened.  Lang relayed to Liggins the story he had told the guests and that Howe had heard him telling the story.  Liggins later told BEP management officials that he did not think Lang's joke was appropriate for the guests.

3. <u>Actions Taken Against Lang Following the TCEPC Meeting</u>

Immediately after leaving the auditorium, Howe sought legal advice from Mary Larson ("Larson"), an attorney with BEP's legal office.  Larson informed Howe that she needed to

speak with someone in BEP's Labor Relations department
regarding the incident.

Howe then consulted with Dave Graf ("Graf"), a BEP
Labor Relations Manager, on what she should do in response
to Lang's conduct.  Howe wrote up a statement of what had
happened, and Graf researched past cases to see if a similar
incident had occurred and what BEP's response had been.
Howe and Graf had several conversations regarding the
incident and Lang's conduct.  Following his research and
gathering of evidence, Graf opined that demoting Lang to the
highest non-supervisory grade position available would be
appropriate.  Taking Graf's advice, Howe proposed Lang be
demoted two grades to a GS-12 investigator, the highest non-
supervisory position available in BEP's Fort Worth security
division.

BEP's Chief of Currency Manufacturing and Deputy Plant
Manager, Ronald Voelker ("Voelker"), was the official
responsible for making the final decision regarding Howe's
proposed demotion of Lang.  Lang submitted a request for an
extension of the deadline to submit a response to the
proposal, which Voelker granted.  On November 2, 2003, Lang
submitted his written response to the proposed demotion.
After reviewing Lang's response, Voelker concluded that Lang
could not be rehabilitated in his position as a DDSM and
that demoting him was the appropriate penalty for Lang's
behavior.  However, after consulting with Graf to find a GS-

13 position that would allow Lang to continue with the work
he did in security while limiting his exposure and dealings
with the public,[1] Voelker decided that a one-grade demotion
to that position was proper.  On January 23, 2004, Voelker
issued a memorandum informing Lang that he was being demoted
to GS-13 non-supervisory position[2] and detailing Lang's
rights to appeal the demotion.  At the time of Lang's
demotion, Volker knew of Lang's prior EEO activity as well
as Lang's race.

   4. <u>Lang's Appeal of His Demotion</u>

     Lang filed an appeal of his demotion with the Merit
Systems Protection Board ("MSPB") on July 2, 2004.  Lang
contended that the demotion was not a proper punishment for
the storytelling incident, and that such demotion
constituted racial discrimination as well as retaliation for
prior EEO activity.  William Carnes ("Carnes"), an
administrative judge for the MSPB, held a hearing regarding
Lang's demotion on September 20, 2004.  On January 26, 2005,
Carnes issued a written decision concluding that the
demotion of Lang did not constitute racial discrimination or
reprisal for EEO activity and that such demotion should be
upheld.  Lang filed for and was denied a petition for review

---

[1] At Voelker's instruction, Howe and Graf identified the investigative
and security duties that Lang could continue to perform as an non-supervisory
investigator and then created a description for such a position at a GS-13
level.

[2] Lang was demoted from a GS-14, step one position with, an annual
salary of $ 88,349.00 to a GS-13, step eight position, with an annual salary
of $ 88,442.00.

of Carnes' decision before the full board of the MSPB.  Lang
then filed an appeal with the Equal Employment Opportunity
Commission ("EEOC") Office of Federal Operations ("OFO") and
on January 20, 2006, it issued a decision approving of
Carnes' decision to uphold Lang's demotion.  On February 14,
2006, Lang filed the instant action in this court.

B. Relevant Disputed Facts

        Howe maintains that during Lang's employment with BEP
as a DDSM, she received multiple complaints about Lang
telling inappropriate stories and jokes containing sexual
innuendos. According to Howe, as Lang's supervisor she
advised him that his behavior of telling such inappropriate
jokes and stories was not acceptable, and that Lang told her
he did not think he had acted inappropriately.  Howe
concluded that Lang's behavior warranted a lower performance
evaluation and because of such behavior changed his annual
appraisal from "exceeded" to "achieved" standards.  Howe
contends that she informed Lang that she did not approve of
his conduct and that she would not allow such unprofessional
behavior to continue.  Lang disputes that he was ever
counseled by Howe about telling inappropriate jokes or
stories.

IV.

7

Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part
of a claim as to which there is no genuine issue of material fact
and as to which the moving party is entitled to judgment as a
matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial
burden of showing that there is no genuine issue of material
fact.  Anderson, 477 U.S. at 256.  The movant may discharge this
burden by pointing out the absence of evidence to support one or
more essential elements of the non-moving party's claim "since a
complete failure of proof concerning an essential element of the
nonmoving party's case necessarily renders all other facts
immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323-25
(1986).  Once the moving party has carried its burden under Rule
56(c), the non-moving party must do more than merely show that
there is some metaphysical doubt as to the material facts.
Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.
574, 586 (1986).  The party opposing the motion may not rest on
mere allegations or denials of pleading, but must set forth
specific facts showing a genuine issue for trial.  Anderson, 477
U.S. at 248, 256.  To meet this burden, the nonmovant must
"identify specific evidence in the record and articulate the
'precise manner' in which that evidence support[s] [its]
claim[s]."  Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994).
An issue is material only if its resolution could affect the
outcome of the action.  Anderson, 477 U.S. at 248.  Unsupported

8

allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment.  Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.  Celotex Corp., 477 U.S. at 323.  If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.  Matsushita, 475 U.S. at 597.  See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

V.

Analysis

A. McDonnell Douglas Burden-Shifting Test

In analyzing a claim of discrimination or retaliation based on circumstantial evidence, the court applies the three-step analytical framework from McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973) as modified by Desert Palace, Inc. v. Costa, 530 U.S. 90 (2003). See also Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1089 (5th Cir. 1995).  In a Title VII action, the complainant must first carry the initial burden under the statute of establishing a prima face case of discrimination or retaliation.  McDonnell at 802.  If he does, "the burden then must shift to the employer to articulate some legitimate,

9

nondiscriminatory reason for" the employer's adverse action.  _Id_.
Finally, complainant must "be afforded a fair opportunity to show
that [defendant's] stated reason for [the adverse action] was in
fact pretext."  _Id_. at 804.

B.  Lang Has Failed to Establish a Prima Facie Case of
    Discrimination or Retaliation

    1. Lang's Discrimination Claim

    "In work-rule violation cases, a Title VII plaintiff may
establish a prima facie case by showing" that employees outside
of his protected class who engaged in similar conduct did not
receive similar punishment.  _Mayberry_, at 1090.  Further,
plaintiff has the burden of establishing that those that he
alleges were similarly situated "were treated differently under
circumstances nearly identical to his."  _Id_. at 1090 (internal
quotation marks omitted).

    Lang has failed to meet his burden in adducing evidence of a
_prima facie_ case of racial discrimination because he cannot show
that similarly situated individuals outside his protected class
were treated differently.  Lang attempts to prove his _prima facie_
case by showing that he received harsher treatment than some
individuals whose conduct was "more serious" than that engaged in
by himself.  However, such characterizations of these
individuals' behavior and the treatment they received are Lang's
conclusions, and thus not proper summary judgment evidence.
Further, in order to prove a _prima facie_ case of disparate
treatment, Lang must show that the persons that he claims were
given different treatment were also similarly situated.

10

Similarly situated, for the purpose of proving a disparate treatment case, is defined as persons disciplined by the same supervisor under "nearly identical" circumstances.  See Mayberry, at 1090.    The summary judgment record does not contain evidence that either Lang's supervisor, Howe, or the official responsible for demoting Lang, Voelker, ever disciplined another employee under nearly identical circumstances as those surrounding Lang's demotion.  Therefore, Lang has failed to prove a prima facie case of discrimination.

   2. Lang's Retaliation Claim

     To establish a prima facie case of retaliation under Title VII, a "plaintiff must prove that: (1) he engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the protected activity and the adverse employment action."  Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001)(citing Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996)).

     Lang asserts in support of his retaliation claim that he was engaged in EEO activity, that he was demoted, and that his EEO activity was a reason for his demotion. While Lang has met his burden in proving the first two elements, he has failed to meet the requirement of adducing evidence of a causal connection between his demotion and his filing of EEO claims.  See Aldrup, 274 F.3d at 286.  Lang's EEO activity began in 2002 and ended in 2003.  He asserts that he was demoted partly out of retaliation for that EEO activity.  At best, Lang has shown that Voelker knew

about the previous EEO claims at the time he demoted Lang. However, there is no summary judgment evidence showing a causal connection between Lang's demotion and his previous EEO activity. The summary judgment evidence on the subject is that Voelker demoted Lang because he believed Lang had behaved inappropriately and was no longer suitable for the responsibilities required by his current position as a DDSM. Thus, Lang has also failed to establish a <u>prima</u> <u>facie</u> case of retaliation.

C. <u>BEP Has Articulated a Legitimate, Non-Discriminatory Reason and Lang Has Failed to Show Pretext</u>

If Lang had been able to establish a <u>prima</u> <u>facie</u> case of discrimination or retaliation, summary judgment for BEP would nonetheless be proper under the <u>McDonnell Douglas</u> burden-shifting framework. BEP met its burden of producing a legitimate, nondiscriminatory reason for demoting Lang in stating that such demotion was due to Lang's inappropriate behavior. <u>See</u> <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510-11 (1993) (stating that the employer's burden is only one of production); <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981) (establishing that the employer "need not persuade the court that it was actually motivated by the proffered" reason).

Consequently, the inference created by a <u>prima</u> <u>facie</u> case of discrimination or retaliation  "drops out" and the burden shifts to Lang to prove BEP's supposed legitimate reason was actually a pretext for discrimination. <u>Price v. Federal Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002)(citing <u>Hicks</u>, at 507-09). On summary judgment, once the burden has shifted back to the

12

plaintiff, he "must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price, at 720 (citing Rubenstein v. Adm'rs. of the Tulane Educ. Fund, 218 F.3d 392, 400 (5th Cir. 2000). Lang failed to produce such evidence. The record is clear that Voelker concluded that Lang conducted himself in an inappropriate manner and that, because of such behavior, he was no longer suitable for a supervisory role as was required of the DDSM position. The proffered evidence of pretext does not rebut BEP's articulated reason for demoting Lang. Thus, even if Lang had established prima facie cases of discrimination or retaliation, his claims could not survive summary judgment.

VI.

Order

For the reasons discussed above, the court concludes that BEP's motion for summary judgment should be granted. Therefore,

The court ORDERS that all claims and causes of action asserted by Lang against BEP in the above-captioned action, be, and are hereby, dismissed with prejudice.

The court further ORDERS that BEP's motion to strike, be, and is hereby, denied as moot.

The court further ORDERS that BEP's motions in limine, be, and are hereby, denied as moot.

SIGNED February 1, 2007.

    /s/ John McBryde
JOHN McBRYDE
United States District Judge